ACCEPTED
. 05-17-00814-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
5/21/2018 12:17 PM
LISA MATZ
CLERK

## NO. 05-17-00815-CR

## IN THE COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS

5/21/2018 12:17:55 PM

LISA MATZ
Clerk

### State of Texas

### v.
### Miguel E. Garciaarrendondo

**Appealing in Cause Numbers 1468097D
from the 297th District Court, Tarrant County, Texas,
The Hon. David C. Hagerman, presiding**

## BRIEF OF APPELLANT

Max J. Striker
State Bar No. 24058138
3000 East Loop 820
Fort Worth, Texas 76112
817.262.0758
maxstrikerlaw@yahoo.com
Attorney for Appellant

## ORAL ARGUMENT REQUESTED

## Identity of Parties and Counsel

Appellant/Respondent:                Miguel E. Garciaarrendondo

Trial Counsel for Appellant:         Hon. Trey E. Loftin
SBOT No. 24004774
301 Commerce St., Suite 3500
Fort Worth, TX 76102
(817) 878-0500

Hon. Steve Jumes
SBOT No. 00796854
300 Throckmorton St. Ste 165
Grand Prairie, TX 75050
(817) 203-2220

Appellate Counsel for Appellant:    Hon. Max J. Striker
State Bar No. 24058138
3000 East Loop 820
Fort Worth, Texas 76112
(817) 262-0758

Appellee:                        State of Texas

Trial Counsel for Appellee:          Hon. Johnny Newbern
SBOT No. 24079049
Hon. Ronnie D. Smith
SBOT No. 24037518
Assistant District Attorneys
401 West Belknap
Fort Worth, Texas 76196-0201
(817) 884-1400

Appellate Counsel for Appellee:            Hon. Debra Windsor
                                           Tarrant County Assistant District
                                           Attorney
                                           Chief, Post Conviction
                                           Appellate Counsel for Appellee:
                                           401 W. Belknap
                                           Fort Worth, Texas 76196-0201
                                           817-884-1642


Trial Court:                               297th District Court

Trial judge:                               Hon. David C. Hagerman

# Table of Contents

Identity of Parties and Counsel ..................................................................................i

Table of Contents ........................................................................................ iii

Index of Authorities…………………………………………………………...viii

      Federal Cases ......................................................................................viii

      State Cases………………………………………………...................viii

      Constitutional References……………………..…………………………x

      Codes and Statutes…………………………………………………….x

Statement of the Case...................................................................................1

Issues Presented ........................................................................................2

Statement of Facts.......................................................................................3

Summary of the Argument…………………………………..………….…5

Argument and Authorities.......................................................................... 9

**I.     The court erred in not granting the defense motion for a directed verdict because there was insufficient evidence that the appellant caused the injuries…………………………………………………....9**

      A. Relevant Law…………………………………………………….9

         1. Sufficiency of evidence Standard of Review………………….9

         2. Law of the Case………………………………………………..10

            a. Aggravated Assault……………………………………………10

     b. Assault……………………………………………………..…...11

     c. Serious Bodily Injury……………………………………………11


  B. Case at Bar……………………………………………….......12

   1. Background……………………………………………..…12

   2. The testimony……………………………………….….…..13

     a. Esperanza "Hope" Gomez……………………………….…13

     b. Jessica Acosta………………………………………….…14

     c. Dr. Dave Donahue…………………………………….…..16

     d. Rueben Acosta………………………………………….…17

     e. Destiny Acosta……………………………..………………..18

     f. Appellants Taped Interview……………………………….19

   3.  The evidence is insufficient…………………………………..19

     a. There was no evidence Appellant caused the injury…………..19

     b. The conclusions was based on speculation..…………….…...21


  C. Summary……………………………………………..…….......22


**II.**   **The court erred in not granting the defense motion for a directed verdict because there was insufficient evidence of a Deadly Weapon**.
……………………………………………………………………...23

  A. Relevant Law……………………………………………….23

iv

1. Sufficiency of evidence standard of review ……….…..……….23

2.     Law of the Case………………………………………….24

   a.     Aggravated Assault…………………..……….24

   b.     Assault………………………………………….25

   c.     Serious Bodily Injury………………….……….25


B. Case at bar…………………………………………………...26

   1. There was no evidence of a deadly weapon.…………………26

   2. Jury agreed there was no evidence of a deadly weapon…………26


C. Summary……………………………………………………..27

III.   **The indictment was insufficient because the means was described in the indictment as via a "hard or soft object or surface" which failed to give Appellant adequate notice**………………………………………………………28

   A.     Relevant law………………………………….……28

      1.     Standard of Review ………………………….………...28

      2.     Fair Notice…………………………………………….28

   B.     Case at Bar……………………………….......................31

      1.  Indictment language…………………………………….31

      2.  Argument of Defense Counsel ……………………….…..32

      3. Indictment was insufficient ……………………………...34

**IV.** **The trial court erred when it allowed the jury charge to include an ambiguous jury verdict form for the trial on the merits resulting in jury charge error.**……………………………………..…………36

    A. Standard of Review…………………………………………….36

        1. Verdict Form…………………………………………..36

        2. Charge Error Preservation……………………………....36

        3. When to withdraw jury Charge …………………………..36

    B. Case at Bar…………………………………………….....37

        1. Trial court Instructions…………………………………37

        2. Objection by Defense……………………………..…….39

        3. Article 37.10(a) Informal Verdicts……………………..49

        4. Uncertain and Ambiguous verdict……………………..50

        5. Harm or egregious harm standard……………………...50

        6. Evidence of Harm………………………………….....52

           a. Entire jury Charge………………………………..52

           b. State of the evidence……………………………..52

    C. Summary………………………………………………53

**V.** **The trial court erred in the jury charge at punishment by finding there was a deadly weapon and thereby using the wrong punishment range.**…………………………………………….................**54**

    A. Standard of Review……………………………………….54

B. Case at bar……………………………………………..……55

    1.   There was no evidence of a deadly weapon…………………..55

    2.   Jury charge on Punishment…………………….........................55

    3.   Harm ………………………………………………………57


C.    Summary……………………………………………………..57


Conclusion .................................................................................................59

Certificate of Service ................................................................................61

Certificate of Word Count…………………………………………........61

# Index of Authorities

**Federal Cases**

*Jackson v. Virginia*, 443 U.S. 307 (1979)……………………………………9,23

**State Cases**

*Allen v. State,* 253 S.W.3d 260 (Tex.Crim.App. 2008)……………………………...51

*Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1984) (en banc)…………….51

*Bui v. State*, 964 S.W.2d 335 (Tex. App.—Texarkana 1998, pet. ref'd)….…..…..52

*Breazeale v. State*, 683 S.W.2d 446 (Tex. Crim. App. 1984)…………………….54

*Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App.2010)…………..……...9,10,23,24

*Curry v. State*, 30 S.W.3d 394 (Tex. Crim. App. 2000)………………………29,30

*Ferguson v. State*, 622 S.W.2d 846 (Tex. Crim. App. 1981)(opinion on reh'g)………………………………………………………………………29

*Ford Motor Co. v. Ridgway*, 135 S.W.3d 598 (Tex. 2004)…………………....19,24

*Geter v. State*, 779 S.W.2d 403 (Tex. Crim. App. 1989)………………………....29

*Hooper v. State*, 214 S.W.3d 9 (Tex.Crim.App.2007)…………………………21

*In re Estate of Campbell*, 343 S.W.3d 899 (Tex. App.–Amarillo 2011)………10,24

*Isassi v. State*, 330 S.W.3d 633 (Tex.Crim.App. 2010)………………………..23

*Jackson v. State*, 656 S.W.2d 673 (Tex. App.—Fort Worth 1983, no pet.)….…..37

*Jennings v. State*, 302 S.W.3d 306  (Tex.Crim.App. 2010)………………..36,49,54

*Kirsch v. State*, 357 S.W.3d 645 (Tex. Crim. App. 2012)………………..,,,,,..36,54

*Lawrence v. State*, 240 S.W.3d 912 (Tex. Crim. App. 2007)…………………28,29

*Marrs v. State*, 647 S.W.2d 286(Tex. Crim. App. 1983)………….……………..29

*Mizell v. State,* 119 S.W.3d 804 (Tex. Crim.App.2003)……………..……….57

*Merritt v. State*, 368 S.W.3d 516 (Tex.Crim.App.2012)…………………..…..23

*Ngo v. State*, 175 S.W.3d 738 (Tex.Crim.App. 2005)…………………….…36

*Polk v. State*, 337 S.W.3d 286 (Tex.App.-Eastland 2010, pet. ref'd)………..….9,23

*Price v. State*, 457 S.W.3d 437 (Tex.Crim.App. 2015)……………………..36

*Reese v. State*, 773 S.W.2d 314, 317 (Tex.Crim.App. 1989)………………..…49

*Sanchez v. State*, 209 S.W.3d 117, 121 (Tex.Crim.App. 2007)…………………..51

*Solis v. State,* 787 S.W.2d 388 (Tex. Crim. App. 1990)…………………………..30

*Smith v. State*, 898 S.W.2d 83 (Tex. Crim. App. 1995)……………………..…37

*Smith v. State*, 309 S.W.3d 10 (Tex. Crim. App. 2010)……………………..28

*Smith v. State*, 397 S.W.3d 765 (Tex. App.—San Antonio 2013, no pet.)……….52

*State v. Barbernell*, 257 S.W.3d 248 (Tex. Crim. App. 2008)…………..28,29,30,31

*State v. Mays*, 967 S.W.2d 404 (Tex. Crim. App. 1998)…………………………..29

*State v. Moff,* 154 S.W.3d 599 (Tex. Crim. App. 2004)……………………..29

*State v. Rhinehart*, 333 S.W.3d 154 (Tex. Crim. App. 2011)……………………..28

*Stuhler v. State*, 218 S.W.3d 706 (Tex.Crim.App. 2007)…………………………51

*Warner v. State*, 245 S.W.3d 458 (Tex.Crim.App. 2008)………………..……51

*Taylor v. State*, 332 S.W.3d 483 (Tex.Crim.App. 2011)…………………..……51

## Constitutional References

U.S. CONST. amend. VI…………………………………………………………….28

TEX. CONST. art. 1, § 10……………………………………………………...28

TEX. CONST. art. V, § 12b………………………………………………….28

## Codes and Statutes

Tex. Code Crim. Proc. art. 37.07 …………………………..…....37,49, 50

Tex. Code Crim. Proc. art. 42.12 …………….……………...…………..…….54

Tex. Code Crim. Proc. art. 21……………………………………….….29

Tex. Penal Code § 22.02……………………………………10,11,24,26,34,56

Tex. Penal Code § 12.33……………………………………………..57

Tex. Penal Code 22.01……………………………………………....11,25

Texas Penal Code § 1.07………………………………………...11,12,25

Tex. Gov't Code § 508.145……………………………………..…….54

Tex. Gov't Code § 508.149……………………………………….….54

Tex. Gov't Code § 508.151…………………………………………..54

## Statement of the Case

Appellant was charged by indictment with one count of Injury to a Child and one count of Aggravated Assault of a Family Member and the Use of a Deadly Weapon in cause number 1468097, which was a direct reindictment of cause number 1368563. (CR at 7). Trial by jury was held on May 16th 2017. (CR at 8). The jury found defendant not guilty of Injury to a Child but guilty on the count of Aggravated Assault of a Family Member. (CR at 278). The jury assessed Appellant's punishment at 30 years TDCJ. (CR at 293). Appellant filed his request for appeal within the time allotted. (CR at 302) Appellant now files this brief that follows.

1

## Issues Presented

1. Was there insufficient evidence that Appellant caused the injuries to the child?

2. Was there insufficient evidence that a Deadly Weapon was used?

3. Was the indictment insufficient notice because the means was described in the indictment as a "hard or soft object or surface"?

4. Did the trial court use an ambiguous jury verdict form in the trial on the merits resulting in jury charge error ?

5. Did the trial court err in the jury charge at punishment by incorrectly determining there was a deadly weapon finding and thereby using the wrong punishment range?

## Statement of the facts

On January 14th, 2014, Appellant, Miguel Garciaarrendondo, was living with his girlfriend Jessica Acosta's family in an apartment in Arlington, Texas. (RRV at 26-27). On that night Miguel and all the family members were at home- Jessica and her two children Julio Cruz Jr. (Baby Julio) and Joseph Acosta (JoJo), Jessica's sister Destiny Acosta, her father Rueben Acosta and his girlfriend Esperanza (Hope) Gomez. (RRV at 26-27).

Although the testimony varies somewhat from person to person, all agree that after eating dinner Rueben, Hope and JoJo went into Rueben's bedroom after dinner. (RRV at 35, 110, 280; RRVI at 17). Miguel and Jessica went into their bedroom. (RRV at 33, 110, 280, RRIV at 18-19). At some point, Jessica and Destiny went into the kitchen to clean it. (RRV at 35-6, 112-13, 280; RRVI at 17-18).

Sometime after they finished, Baby Julio, who had been in Miguel and Jessica's room since after dinner, was found to have a swollen head by Miguel. (RRV at 36-27, 117,286-287, RRVI at 22). Miguel called out for help and the decision was made to drive Baby Julio to the hospital. (RRV at 36-27, 117, 286-287; RRVI at 22). Baby Julio was found to have fractures to both sides of his skull. (RRV at 217) No one confessed to causing the child's injuries. (See RR generally).

No one stated they saw how it happened. (See RR generally). In the end, Miguel

was charged. (CR at 5).

## Summary of the Argument

In his first issue, Appellant argues there was insufficient evidence Appellant caused the injuries to the child Baby Julio. In the case at bar, there is no exact determination of time of injury. This makes it impossible to know who was around the child at the time of the injury. The only timeline presented by Dr. Donahue was that injury most likely occurred within 12 hours of when he first encountered Baby Julio.

The testimony shows that not only was Appellant Miguel alone with the child at one point that evening, but Destiny was also alone with the child. All the parties admitted contact with the child, yet no one saw the injury occur.

It is therefore clear that in finding Miguel to be the responsible party based on a nonexistent timeline, no witnesses to the injury, and another party that was probably responsible and had opportunity, that the jury came to a verdict based on speculation. Juries are permitted to draw reasonable inferences from the evidence, but they are not permitted to draw conclusions based on speculation.

In his second issue, Appellant claims there is insufficient evidence of a deadly weapon. The only evidence presented on how the injury was caused was in Dr. Donahue's testimony. The Doctor suggested in his testimony that the possible causes could be hand pressure, stomping, or being hit against a wall or door jam.

However, he could not say exactly what caused the injury to Baby Julio in this case. No evidence was presented at trial of any object used to cause the injuries.

The jury apparently agreed that there was no evidence of a deadly weapon. On the Jury Verdict Form, the jury was asked if they found evidence beyond a reasonable doubt that a deadly weapon existed. They checked the blank that said **_we do not_**.

In his third issue, Appellant argues that the indictment was insufficient because it described the means of injury by a "hard or soft objector surface". Although the language of the indictment tracked the statute, alternative manners or means in which the act or commission can be committed are clearly laid out by statute as well. Thus, in the case at bar, the pleading will supply adequate notice only if in addition to setting out the elements of an offense, it also alleges the specific manner and means of commission that the State intends to rely on at trial.

Here the phrase "hard or soft object or surface" fails to describe the specific manner and means of commission. Soft is the opposite of hard. Which is the Appellant to defend against? This is too vague and must be plead with more particularity. The charging instrument must convey sufficient notice to allow the accused to prepare a defense. This phrase fails to do so. Thus, the indictment was insufficient because means was described in the indictment as a "hard or soft object or surface".

In his fourth issue, Appellant claims that the ambiguous and confusing verdict form caused egregious harm to Appellant. The jury apparently agreed that there was *no* evidence of a deadly weapon because on the Jury Verdict Form the jury checked the blank that said **_we do not_**.

Since the element that *the defendant used or exhibited a deadly weapon* is clearly an element of the charge of Aggravated Assault of a Family Member with a Weapon, the jury should have answered in the affirmative. Thus, the verdict contradicted itself and was clearly not answered as authorized.

Here, there was a discrepancy in the jury's verdict. It was reasonably called into question and objected to by the defense. An essential element of the charge - the element that the defendant used or exhibited a deadly weapon- was negated by the negative answer on the jury verdict form.  The trial court should have rejected the verdict because it was so ambiguous that the jury's intent could not be fairly ascertained. The trial court could properly have withdrawn and corrected the jury charge but failed to do so.

In his fifth issue, Appellant claims there was verdict form error on the punishment charge as well. The jury apparently agreed that there was no evidence of a deadly weapon because on the Jury Verdict Form the jury checked the blank that said **_we do not._**

However, the Jury Verdict Form on the punishment trial indicates the punishment range is 5 to 99. This is only the punishment range if there is a deadly weapon finding. The punishment range is 2 to 20 with no deadly weapon finding. And indeed, Appellant was sentenced to 30 years which is outside the second degree punishment range.

Since there was clearly no deadly weapon finding, the punishment range was erroneous and Appellant was clearly sentenced outside the punishment range. For this reason and all the others mentioned above, Appellant respectfully requests the judgment of the trial court be reversed.

**Argument and Authorities**

**I. The court erred in not granting the defense motion for a directed verdict because there was insufficient evidence the Appellant caused the injuries.**

**A. Relevant Law**

**1. Sufficiency of evidence standard of review**

A sufficiency of the evidence review is conducted under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App.2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex.App.-Eastland 2010, pet. ref'd). Under this standard, all the evidence is examined in the light most favorable to the verdict to determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 Tex.Crim.App. 2010).

In conducting a sufficiency review, the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Merritt v.*

9

*State*, 368 S.W.3d 516, 525 (Tex.Crim.App.2012); *Brooks*, 323 S.W.3d at 899.

"…the correct standard must incorporate the prosecution's burden of proof-beyond a reasonable doubt in a due-process review." *Brooks v. State*, 323 S.W.3d 893, 917(Tex.Crim.App. 2010). "A reasonable doubt might arise because the verdict is manifestly against the great weight and preponderance of the credible evidence or because there is nothing more than a mere scintilla of evidence to support some element of the offense." *Id.* "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." In re *Estate of Campbell*, 343 S.W.3d 899, 904n.6 (Tex. App.–Amarillo 2011, no pet.) (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598,601 (Tex. 2004)).

### 2. Law of the case

### a. Aggravated assault

Sec. 22.02.  AGGRAVATED ASSAULT.  (a)  A person commits an offense if the person commits assault as defined in Sec. 22.01 and the person:(1) causes serious bodily injury to another, including the person's spouse;  or (2)  uses or exhibits a deadly weapon during the commission of the assault.

(b) An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:

(1) the actor uses a deadly weapon during the commission of the assault and causes serious bodily injury to a person whose relationship to or association with the defendant is described by Section 71.0021(b) , 71.003 , or 71.005, Family Code Tex. Penal Code Ann.22.02 (Vernon 2003).

### b. Assault

Sec. 22.01. ASSAULT. (a) A person commits an offense if the person:(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. Tex. Penal Code Ann. 22.01(Vernon 2003).

### c. Serious bodily injury

Texas Penal Code § 1.07(46) defines serious bodily injury as meaning bodily injury that creates a substantial risk of death or that causes death, serious

permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. Texas Penal Code § 1.07(46) (Vernon 2003);

**B. Case at bar**.

## 1. Background

On January 14th 2014, appellant, Miguel Garciaarrendondo was living with his girlfriend Jessica Acosta's family in an apartment in Arlington. Texas. (RRV at 26-27). On that night Miguel and all the family members were at home- Jessica and her two children Julio Cruz Jr. (Baby Julio) and Joseph Acosta (JoJo), Jessica's sister Destiny Acosta, her father Rueben Acosta and his girlfriend Esperanza (Hope) Gomez. (RRV at 26-27).

Although the testimony varies somewhat from person to person, all agree that after eating dinner Rueben, Hope and JoJo went into Rueben's bedroom after dinner. (RRV at 35, 110, 280; RRVI at 17). Miguel and Jessica went into their bedroom. (RRV at 33, 110, 280, RRVI99

at 18-19). At some point, Jessica and Destiny went into the kitchen to clean it. (RRV at 35-6, 112-13, 280; RRVI at 17-18) Sometime after they finished, Baby Julio, who had been in Miguel and Jessica's room since after dinner, was found to have a swollen head by Miguel. (RRV at 36-27, 117,286-287, RRVI at 22). Miguel called out for help and the decision was made to drive Baby Julio to the hospital. (RRV at 36-27, 117,286-287; RRVI at 22). Baby Julio was found to have fractures to both sides of his skull. (RRV at 217) No one confessed to causing the child's injuries. (See RR generally). No one stated they saw how it happened. (See RR generally). In the end, Miguel Garciaarrendondo was charged. (CR at 5).

**2.The testimony**

**a. Esperanza "Hope" Gomez**

Esperanza Gomez (Hope) testified that at the time of the incident she lived in an apartment in Arlington Texas with her fiancé Rueben Acosta, Rueben's two daughters Destiny Acosta, and Jessica Acosta, Jessica's boyfriend Miguel Garciaarrendondo and Jessica's two children Joseph Acosta (JoJo) and Julio Cruz Jr. (Baby Julio). (RRV at 26-27).

She further testified that Julio Cruz Senior dropped off Julio Cruz Jr. (Baby Julio) at 6 P.M. (RRV at 31,59). Hope was cooking dinner at that time. (RRV at

33). JoJo, Miguel and Jessica ate in Jessica's bedroom. (RRV at 33). The last time she saw Baby Julio before the injury, Baby Julio was sitting in his walker because Jessica put him in front of T.V. (RR at 34; 44). Jessica cleaned the kitchen (RRV at 35-36). Destiny cleaned living room. (RRV at 35-36). JoJo, Rueben and Hope went to Rueben's room for the night at 8:45 P.M. (RRV at 35). "Ten or Fifteen" minutes later, Miguel knocked on door and said "come and check on Baby Julio" (RRV at 36). Baby Julio's head was swelling and he made no noise. (RRV at 37). Hope was in Rueben's bedroom with JoJo. (RRV at 61). Hope called 911 at 9:20 P.M. (RRV at 84-5). Miguel drove Baby Julio to hospital with Jessica and Destiny. (RRV at 86). Hope then went to get Julio Cruz Senior. (RRV at 87).

### b. Jessica Acosta

Jessica Acosta, Baby Julio's and JoJo's mom, began her testimony by explaining that she had been found guilty on two drug charges in Dallas, manufacturing and attempted delivery, and was currently in SAFP custody (RRV at 101-103). She then testified that Julio Cruz Sr. dropped off Baby Julio at 6 or 6:30P.M. (RRV at 108) Baby Julio was normal and happy when he was dropped off. (RRV at 109). Baby Julio was left alone with Destiny while Miguel and Jessica went to smoke out the front door before doing dishes. (RRV at 110 -111).

14

Hope and Rueben and JoJo were in Rueben's room at this time. (RRV at 110 - 111).

When Jessica came back from smoking, Baby Julio was eating a cookie. (RRV at 110 -111). Jessica came back, grabbed Baby Julio and put him in his crib in Jessica's room. (RRV at 113). Miguel stayed in room Jessica's room. (RRV at 112-113). Baby Julio seemed fine but was crying when she put him in his crib (RRV at 114,115). She then closed the door to the room and then went and cleaned dishes with Destiny. (RRV at 115,116)." The baby is still crying" said Miguel. (RV at 116). "I'll be there in a minute" said Jessica. (RRV at 116). She returned to Jessica's room 10 minutes later and thought baby Julio was asleep. (RRV at 117) Baby Julio was wet. (RRV at 117.) Jessica went to get "stuff" to change the baby and asked Miguel to get baby. (RRV at 117.) Miguel yelled and Jessica saw Baby Julio's head droop to his chest. (RRV at 117.)

On cross, Jessica at first testified that JoJo was playing blocks with Baby Julio before going in the room with Hope and Rueben for the night. (RRV at 127-128). Then she testified that JoJo was playing blocks with Baby Julio before dinner and that Jessica watched a movie with Baby Julio in Jessica's room after dinner. (RRV at 128,153). Jessica then testified that she remembered telling the police at the time that Destiny checked on Baby Julio two times when Destiny and Jessica

15

were in the kitchen cleaning. (RRV at 113). She testified that she did not notice Baby Julio was injured while lying on his side in the crib when she went to check if he was wet. (RRV at 138). She also agreed that she had made an earlier statement in that she had told Miguel to check the diaper. (RRV at 140). She testified that Miguel took Jessica and Destiny and baby to hospital and Jessica held the baby in front seat. (RRV at 142-143.) She admitted that she told hospital that the baby had congestion and fever. (RRV at 148). She also admitted she wasn't sure if door was closed or cracked open. (RRV at 154,156). She admitted that she and Destiny both checked on the baby while doing dishes. (RRV at 157).

### c. Dr. Dave Donahue

Third to testify was Doctor Dave Donahue who treated Baby Julio at the hospital. Dr. Donahue testified that Baby Julio is today now missing part of his skull and is partially paralyzed. (RRV at 186). At the time he first saw Baby Julio his head was swelling and he was suffering from a cranial burst fracture. (RRV at 191,197.) One or more blows could have caused the fractures on both sides of the head. (RRV at 208). He believed that a crib injury was not likely. (RRV at 217). The injury most likely occurred within 12 hours. (RRV at 229; 259). Dr. Donahue testified that, in his opinion, the injury would cause immediate unconsciousness but the baby could have extended his limbs and cried. (RRV at 229-231). He

16

suggested that the possible causes could be hand pressure, stomping, or hitting against a wall or door jam. (RRV at 255-257) However, he could not say exactly what caused the injury to Baby Julio in this case. (RRV at 256).

### d. Rueben Acosta

Ruben Acosta, the family patriarch, said that he first saw Baby Julio that evening when Jessica gave Baby Julio to him so she could go smoke a cigarette outside directly after Julio Cruz Sr. dropped off Baby Julio. (RRV at 278).

Baby Julio was fine and Rueben handed the baby back to Jessica when she finished smoking. (RRV at 278). Then they had dinner. (RRV at 279). Hope, JoJo and Destiny ate in living room directly after the smoke. (RRV at 279-280). Miguel, Jessica and Baby Julio then went to Jessica's bedroom. (RRV at 280). Rueben went to his bedroom between 7 and 8 P.M. (RRV at 280). Destiny was in the room with Miguel. (RRV at 281). Hope and JoJo were in Rueben's room. (RRV at 282). After a while, he left his room and knocked on Jessica's door and told the girls to clean kitchen. (RRV at 282). When he did so, he saw Miguel, Destiny and Jessica watching T.V. but did not see Baby Julio. (RRV at 283).

He left his room again later to bring JoJo to the bathroom. (RRV at 283). Jessica's door was open two inches and he saw Miguel inside. (RRV at 284-286).

17

He then talked to the girls in the kitchen, JoJo told his mom Jessica goodnight and he and JoJo went back into Rueben's room. (RRV at 284-286). Five to eight minutes later Jessica and Miguel called Hope. (RRV at 286). When he saw Baby Julio "he was looking at me like he was telling me to help him." and his head was swollen. (RRV at 287). Rueben told Hope to call 911 but then just said take Baby Julio to the hospital around the corner.  (RRV at 287-288). Rueben insisted that Miguel did not knock on Rueben's door. (RRV at 303).

### e. Destiny Acosta

Destiny Acosta testified that Baby Julio was at the apartment when her friend dropped her off. (RRVI at 16). Destiny testified that she was alone with Baby Julio while Miguel and Jessica took a smoke break on the porch after dinner but before they cleaned the kitchen. (RRVI at 17). Hope and Ruben were inside their room with JoJo at the time she watched the baby. (RRVI at 17). She watched Baby Julio for five minutes and gave him a saltine cracker.  (RRVI at 17-18). Jessica then went in Jessica's bedroom with Miguel and baby before she came out to do the kitchen.  (RRVI at 18-19). It took 30 minutes to do the kitchen. (RRV at 19) During this time she heard the baby cry and then stop. (RRVI at 20). She went to the living room after the dishes. (RRVI at 21). Miguel knocked on Hope's door and said Baby Julio's head was swollen. (RRVI at 21). Destiny's dad, Rueben, told

18

them to drive to the hospital. (RRVI at 22). She was given the baby and his eyes rolled back. (RRVI at 23).

But on cross she testified that she was told to do the kitchen, then came the smoke break and then they did the kitchen. (RRVI at 41). The smoke break was 10 or 15 minutes after dinner. (RRVI at 42). Destiny then testified that she went to Jessica's room before the smoke break. (RRVI at 43). She testified that she never checked on the baby. (RRVI at 45). Her dad Rueben did not come out of the room until after the injury was discovered. (RRVI at 52). Everyone ate dinner in living room. (RRVI at 53).

### f. Appellant's taped interview.

Appellant, Miguel, denied causing any injury to Baby Julio in a taped interview with police. (See– States Exhibit 42)

### 3.The Evidence is Insufficient

#### a. There was no evidence Appellant caused injury

The major problem with the evidence presented by the State in this case is that there was no exact determination of time of injury. This makes it impossible to know who was around the child at the time of the injury. The only timeline

19

presented by Dr. Donahue was that injury most likely occurred within 12 hours of when he first encountered Baby Julio. (RRV at 229; 259).

In this case, not only was Appellant Miguel alone with the child at one point that evening, Destiny was also alone with the child. She was alone with Baby Julio while Miguel and Jessica took a smoke break on the porch after dinner but before cleaning the kitchen, according to Destiny. (RRIV 17). It was after this "smoke break" that the baby was crying. (RRVI at 18-21). During this time Destiny heard the baby cry and then stop. (RRVI 18-21).

Wouldn't a reasonable jury come to the conclusion that the child was injured while Destiny was alone with Baby Julio? It seems clear that after the shock of the injury during Destiny's care, Baby Julio began to cry causing Miguel to tell the baby's mother "The baby is still crying" to which she responded "I'll be there in a minute". (RRV at 116).

All the parties admitted contact with the child yet no one saw the injury occur. (See RR generally). The doctor's insistence that the child would be immediately unconscious was contradicted by witness testimony from Rueben who testified that when he saw Baby Julio after the injury "he was looking at me like he was telling me to help him" and by Destiny's testimony that she was with the baby

20

after his head began to swell and Baby Julio's eyes rolled back after the injury. (RRV at 287; RRVI at 23). Even so, the Doctor admitted that the baby could have extended his limbs and cried while unconscious - which doesn't really make much sense. (RRV at 229-231).

### b. The conclusion was based on speculation.

It is clear that in finding Miguel to be the responsible party, the jury came to a verdict based on speculation. There was a nonexistent timeline, no witnesses to the injury, and another party that was probably responsible and had opportunity. Juries are permitted to draw reasonable inferences from the evidence, but they are not permitted to draw conclusions based on speculation. *Hooper v. State*, 214 S.W.3d 9, 15 (Tex.Crim.App.2007).

Speculation is the mere theorizing or guessing about the possible meaning of the facts and evidence presented. (*Id*. at 16). On the other hand, "an inference is a conclusion reached by considering other facts and deducing a logical consequence from them." (Id). A conclusion that is reached by speculation may not seem completely unreasonable, but it is not sufficiently based upon facts or evidence to support a conviction beyond a reasonable doubt. (*Id*.) Here there are not sufficient

21

facts to conclude that Appellant was the perpetrator that caused the injuries to Baby Julio.

**C. Summary**

Clearly there was a lack of evidence in this case. At least two people were alone with the child at one time or another. The lack of a time of the injury makes determining who was with the child at the time the injury occurred- and thus who caused the injury- mere speculation. As the evidence was insufficient, the case should be overturned.

**II. The court erred in not granting the defense motion for a directed verdict because there was insufficient evidence of a Deadly Weapon.**

**A. Relevant Law**

**<u>1. Sufficiency of evidence standard of review</u>**

A sufficiency of the evidence review is conducted under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App.2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex.App.-Eastland 2010, pet. ref'd). Under this standard, all the evidence is examined in the light most favorable to the verdict to determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 Tex.Crim.App. 2010).

In conducting a sufficiency review, the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Merritt v. State,* 368 S.W.3d 516, 525 (Tex.Crim.App.2012); *Brooks*, 323 S.W.3d at 899. "…the correct standard must incorporate the prosecution's burden of proof-beyond

a reasonable doubt in a due-process review." *Brooks v. State*, 323 S.W.3d 893, 917(Tex.Crim.App. 2010). "A reasonable doubt might arise because the verdict is manifestly against the great weight and preponderance of the credible evidence or because there is nothing more than a mere scintilla of evidence to support some element of the offense." *Id*. "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." In re *Estate of Campbell*, 343 S.W.3d 899, 904n.6 (Tex. App.–Amarillo 2011, no pet.) (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598,601 (Tex. 2004)).

## 2. Law of the case

### a. Aggravated assault

Sec. 22.02. AGGRAVATED ASSAULT. (a) A person commits an offense if the person commits assault as defined in Sec. 22.01 and the person:(1) causes serious bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the assault. Tex. Penal Code Ann.22.02(a) (Vernon 2003);

(b) An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:

(1)  the actor uses a deadly weapon during the commission of the assault and causes serious bodily injury to a person whose relationship to or association with the defendant is described by Section 71.0021(b) , 71.003 , or 71.005, Family Code Tex. Penal Code Ann.22.02 (Vernon 2003).

## b. Assault

Sec. 22.01.  ASSAULT.  (a)  A person commits an offense if the person:(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;  (2)  intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse;  or (3)  intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. Tex. Penal Code Ann. 22.01(Vernon 2003);

## c. Serious bodily injury

Texas Penal Code § 1.07(46) defines serious bodily injury as meaning bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. Texas Penal Code § 1.07(46) (Vernon 2003);

**B. Case at bar**.

**1. There was no evidence of a deadly weapon**

The only evidence presented on how the injury was caused was in Dr. Donahue's testimony. The Doctor suggested in his testimony that the possible causes could be hand pressure, stomping, or being hit against a wall or door jam. (RRV at 255-257) However, he could not say what caused the injury to Baby Julio in this case. (RRV at 256). No evidence was presented at trial of any object used to cause the injuries in this case. (See RR Generally.)

**2. Jury agreed there was no evidence of a deadly weapon**

The jury apparently agreed that there was no evidence of a deadly weapon. On the Jury Verdict Form the jury was asked if they found evidence beyond a reasonable doubt that a deadly weapon existed. (CR at 279). They checked the blank that said ***We Do Not***. (CR at 279). However, Appellant was clearly found guilty under Tex. Penal Code 22.02(B)(1) which requires a deadly weapon. (CR at 297).

26

**C.Summary**

Clearly there was a lack of evidence in this case. There was clearly no evidence of a deadly weapon and the jury agreed. As the evidence of this element was insufficient the case should be overturned.

**III. The indictment was insufficient because the means was described in the indictment as via a "hard or soft object or surface" which failed to give Appellant adequate notice.**

**A. Relevant Law**

**1. Standard of Review**

The sufficiency of the indictment presents a question of law. *Smith v. State*, 309 S.W.3d 10, 13 (Tex. Crim. App. 2010). Appellate courts review a trial judge's rulings on a motion to quash a charging instrument de novo. *State v. Barbernell*, 257 S.W.3d 248, 251-52 (Tex. Crim. App. 2008). The trial court's ruling should be upheld if it is correct under any theory of law applicable to the case. *State v. Rhinehart*, 333 S.W.3d 154, 161 (Tex. Crim. App. 2011) (applying ordinary rules of procedural default to a State's appeal of a trial court's order quashing the indictment).

**2. Fair Notice**

The Texas and United States Constitutions grant a criminal defendant the right to fair notice of the specific charged offense. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10; TEX. CONST. art. V, § 12b; *Lawrence v. State*, 240 S.W.3d 912, 916 (Tex. Crim. App. 2007); see also *State v. Barbernell*, 257 S.W.3d 248,

250 (Tex. Crim. App. 2008). "The charging instrument must convey sufficient notice to allow the accuse to prepare a defense." *Curry v. State*, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000) (citing *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998)). Toward that end, Chapter 21 of the Texas Code of Criminal Procedure governs charging instruments and provides legislative guidance concerning the requirements and adequacy of notice. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); *Ferguson v. State*, 622 S.W.2d 846, 849-50 (Tex. Crim. App. 1981)(opinion on reh'g).

The courts have recognized that in most cases a charging instrument that tracks the statutory text of an offense is sufficient to provide a defendant with adequate notice. *Barbernell*, 257 S.W.3d at 251; *Lawrence*, 240 S.W.3d at 916; Curry, 30 S.W.3d at 398. When a statutory term or element is defined by a statute, the charging instrument does not need to allege the definition of the term or element. *Barbernell*, 257 S.W.3d at 251; Geter v. State, 779 S.W.2d 403, 405 (Tex. Crim. App. 1989). Typically, the definition of terms and elements are regarded as evidentiary matters. *Marrs v. State*, 647 S.W.2d 286, 289 (Tex. Crim. App. 1983); see also Curry, 30 S.W.3d at 398.

But in some cases, a charging instrument that tracks the statutory language may be insufficient to provide a defendant with adequate notice. *Barbernell*, 257

29

S.W.3d at 251; *Curry*, 30 S.W.3d at 398. This is so when the statutory language fails to be completely descriptive. *Barbernell*, 257 S.W.3d at 251*; Curry*, 30 S.W.3d at 398. For example, a statute which uses an undefined term of indeterminate or variable meaning requires more specific pleading in order to notify the defendant of the nature of the charges against him. *Mays*, 967 S.W.2d at 407.

Likewise, when a statute defines the manner or means of commission in several alternative ways, an indictment will fail for lack of specificity if it neglects to identify which of the statutory means it addresses. Id.; see also *Barbernell*, 257 S.W.3d at 251 ("The statutory language is not completely descriptive 'when the statutes define a term in such a way as to create several means of committing an offense, and the definition specifically concerns an act or omission on the part of the defendant.' ") (quoting *Solis* v. *State*, 787 S.W.2d 388, 390 (Tex. Crim. App. 1990)).

In *Barbernell*, the court of criminal appeals prescribed a two-step analysis for evaluating the adequacy of an indictment's allegations. "First, a court must identify the elements of an offense." *Barbernell*, 257 S.W.3d at 255. The elements of an offense include: (1) forbidden conduct; (2) the required culpability,

if any; (3) any required result; and (4) the negation of any exception to the charged offense. *Id*.

Second, if an element of the offense describing an act or omission by the defendant has been defined by the Legislature, a court must ask whether the statute provides "alternative manners or means in which the act or omission can be committed." *Id*. If so, then the pleading "will supply adequate notice only if, in addition to setting out the elements of an offense, it also alleges the specific manner and means of commission that the State intends to rely on at trial." *Id*.

### B. Case at bar

### 1. <u>Indictment language</u>

Here the relevant part of the indictment states:

COUNT TWO: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE DEFENDANT IN THE COUNTY OF TARRANT AND STATE AFORESAID ON OR ABOUT THE 6TH DAY OF APRIL 2014, DID INTENTIONALLY OR KNOWINGLY OR RECKLESSLY CAUSE SERIOUS BODILY INJURY TO JULIO CRUZ, A MEMBER OF THE DEFENDANT'S

31

FAMILY OR HOUSEHOLD, BY STRIKING JULIO CRUZ WITH OR

AGAINST A HARD OR SOFT OBJECT OR SURFACE, AND THE

DEFENDANT DID USE OR EXHIBIT A DEADLY WEAPON, NAMELY A

HARD OR SOFT OBJECT OR SURFACE, DURING THE COMMISSION OF

THIS ASSAULT…

(CR at 7).

2. **Argument of defense counsel**

Appellant's Defense counsel argued as follows:

MR. LOFTIN: Okay. One quick thing on

the -- as I alluded to on the difference in the two

indictments, I believe is a request for a deadly weapon

finding on an unknown soft object. Basically, Judge, we

think as a matter of law that's both vague and impossible

in its definition that they allege in its vagueness to

even be a deadly weapon. So we'll -- we'll have better

32

objections for you later. At this first opportunity, I wanted to object to that deadly weapon notice.

MR. NICKOLS: Your Honor, even though I don't think this is ripe now, let the record reflect it does not say "unknown object or soft surface." It says "a hard or soft object or surface," which is held sufficient.

MR. LOFTIN: Which, Your Honor, by definition, the opposite of hard is soft and the opposite of soft is hard; that's about as vague as you can get.

THE COURT: Note's not vague, it's ambiguous.

MR. LOFTIN: That, too.

THE COURT: Well, anybody got any case law

about this, perchance?

MR. NEWBERN: Not at this time, Judge, but

I bet we can get it.

THE COURT: Okay. So what are you asking

the Court to do, Mr. Loftin?

MR. LOFTIN: Strike the deadly weapon

notice for its vague and ambiguity.

THE COURT: I will not do that at this

time, but I'll take it under consideration.

(RRII at 23-24)

## 3. **The indictment was insufficient**

Although the language of the indictment tracked the statute, alternative

manners or means in which the act or omission can be committed are clearly laid

out by statute as well. See Tex. Penal Code Ann.22.02 (Vernon 2003). Thus, in the

case at bar, the pleading will supply adequate notice only if in addition to setting

34

out the elements of an offense, it also alleges the specific manner and means of commission that the State intends to rely on at trial.

Here the phrase "hard or soft object or surface" fails to describe the specific manner and means of commission. Soft is the opposite of hard. Which is the Appellant to defend against? This is too vague and must be plead with more particularity. The charging instrument must convey sufficient notice to allow the accuse to prepare a defense. This phrase fails to do so. Thus, the indictment was insufficient because means was described in the indictment as a "hard or soft object or surface".

**IV. The trial court erred when it allowed the jury charge to include an ambiguous jury verdict form for the trial on the merits resulting in jury charge error.**

**A. Standard of Review**

**1. Verdict Form**

When used, a verdict form becomes part of a jury charge, and the courts will review verdict-form errors as jury-charge errors. *Jennings v. State*, 302 S.W.3d 306, 307 (Tex.Crim.App. 2010). Jury charge error is reviewed in two steps: first, determine whether error exists; if so, then evaluate whether sufficient harm resulted from the error to require reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex.Crim.App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex.Crim.App. 2005).

**2. Charge error preservation**

An appellate court reviews jury charge error based on whether error was preserved. See *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). "Objected-to-error" is reviewed for "some harm, " while "unobjected-to-error" is reviewed for "egregious harm." *Jennings v. State*, 302 S.W.3d 306, 311 (Tex. Crim. App. 2010).

### 3.  When to withdraw a jury charge

The trial court may withdraw and correct a jury charge if convinced the charge is erroneous. See *Smith v. State*, 898 S.W.2d 838, 854-55 (Tex. Crim. App. 1995); *Jackson v. State*, 656 S.W.2d 673, 674 (Tex. App.—Fort Worth 1983, no pet.) (trial court did not commit harmful error by submitting correct verdict form after jury returned guilty finding on incorrect verdict form). See Tex. Code Crim. Proc. art. 37.10(a).

### B. Case at bar

### 1. Trial court instructions

Here the verdict form stated as to count one:

**"We, the Jury, find the defendant, Miguel E. Garciaarrendondo, guilty of the offense of injury to a child as charged in count one of the indictment."**

**or**

**"We, the Jury, find the defendant, Miguel E. Garciaarrendondo, not guilty." (CR at 278).**

The Jury Foreman signed in the Not Guilty line. (CR at 278). As to count two the jury verdict form stated:

**"We, the Jury, find the defendant, Miguel E. Garciaarrendondo, guilty of the offense of aggravated assault as charged in count two of the indictment.**

**Or**

**"We, the Jury, find the defendant, Miguel E. Garciaarrendondo, not guilty." (CR at 278).**

The Jury Foreman signed on the Guilty line. (CR at 278). This was followed by a special issue that stated:

**"Do you find from the evidence beyond a reasonable doubt that a deadly weapon, namely: a hard or soft object or surface, that in the manner of its use or intended use was capable of causing death or serious bodily injury, was used or exhibited during the commission of the felony offense or felony offenses set out above and that the defendant used or exhibited the deadly weapon?" (CR at 279).**

Followed by:

**"ANSWER: ___ We do ____We do not."**

38

**(CR at 279).**

The jury checked ***we do not***. (CR at 279). Since the element that the defendant used or exhibited the deadly weapon is clearly an element of the charge of Aggravated Assault of a Family Member with a Deadly Weapon, the jury should have answered in the affirmative. Thus, the verdict contradicted itself and was clearly not answered as authorized.

## 2. Objection by Defense

Here there was a lengthy argument by defense counsel that went as follows:

HE COURT: All right. Both sides ready to

bring in the jury and begin the punishment phase?

MR. NEWBERN: State's ready, Judge.

THE COURT: Defense?

MR. LOFTIN: Your Honor, at this point, we

wish to take up a matter before you -- a legal matter --

regarding the sufficiency of the evidence and whether an

39

essential element of Count 2 has been negated by the verdict.

THE COURT: How is that?

MR. JUMES: Your Honor, on the jury verdict form, the jury, even though they were not supposed to, passed upon whether they found beyond a reasonable doubt there was a deadly weapon used in this offense. A deadly weapon allegation was both in Count 2 of the indictment as well as the application paragraph of the jury instruction. The Court -- the Court, in its gatekeeper function, talked to the State about proceeding on both counts. The State elected to proceed on both counts. Ultimately, whether the jury made a mistake or not, we have a finding from the jury, which was

40

polled, that unanimously finds negatively regarding

deadly weapon; that's an essential element of Count 2.

And, as a matter of law, we move that a verdict of

acquittal or a finding of acquittal is warranted in Count

2.

THE COURT: State, you wish to be heard on

this?

MR. SMITH: Your Honor, referring to page 6

of the Court's Charge, it says, "If you find the

defendant, Miguel E. Garciaarrendondo, guilty of the

offense of injury to a child as charged in Count 1, then

you should also consider the following special issue.

Otherwise, do not consider the special issue."

The defendant was found not guilty by this

41

jury on Count 1, injury to a child; so, therefore, any

findings on the special issue do not apply. It is not

applied to -- the special issue applies only to Count 1

and not to Count 2 of the indictment.

The defendant -- the defendant has been

found unanimously guilty by this jury for aggravated

assault causing serious bodily injury to a family member

using a deadly weapon.

MR. JUMES: Your Honor, if I may perfect

the record.

First, the fact that the jury erroneously

passed on the issue is not the issue before the Court.

There is a finding from the jury, they did pass on that

issue, that is a mandatory element, there have been no

42

two theories of this case, there are not two alleged victims nor are there two alleged offense dates or occasions. There is one incident. And this jury is now going to be argued on a first-degree punishment range that includes a finding of deadly weapon where they have found there is no deadly weapon. The fact that it is an erroneous -- or a mistake by the jury to pass on that is not the issue. The issue is the finder of fact found negatively regarding a deadly weapon, and that's an essential element.

THE COURT: Go ahead.

MR. SMITH: And, Your Honor, to perfect our record, the State's not acquiescing that this is a mistake. This just doesn't matter. This page can be

43

ripped off the verdict form because it does not apply to

Count 2.

It's obvious that the jury, in their

finding, believed that the defendant acted recklessly as

to his conduct. That is the difference between Count 1

and Count 2. That is where they decided to proceed

because they believed that the defendant was reckless in

his conduct. That's the main difference. So, therefore,

it is the State's position that this page doesn't apply

to Count 2. We have a unanimous verdict as to Count 2 of

the -- of the indictment and of the Court's Charge.

THE COURT: Anything else, Mr. Jumes?

MR. JUMES: Yes. And thank you for giving

me an opportunity.

44

Within the special issue, it has the

verbiage, "for the offense or felony offenses above."

The wording within the special issue actually refers to

both counts. And so, the issue is what the jury has

found as a fact finder that is on the record. We can't

tear that page out of the verdict form. It is a part of

their findings, which they were polled upon, and they

were unanimous about, Judge.

THE COURT: Well, but why is special issue,

one, not moot?  Because at the moment they found him not

guilty of the greater offense, the special issue had no

effect.

You agree with that?

MR. JUMES: We don't agree that it's the

45

greater offense. They both carry a first-degree penalty range.

THE COURT: Well, it is a greater offense in terms of -- a greater offense can be, not just in terms of punishment range or level of offense, but it can also, be in terms of -- of culpable mental state.

MR. JUMES: Right.

THE COURT: Knowingly using a deadly weapon is different from recklessly using a deadly weapon.

Do you agree with that, Mr. Jumes?

MR. JUMES: I do agree -- I agree with that, Your Honor. Having said that, the special issue asks if a deadly weapon was used at all under references --

THE COURT: As to Count 1.

MR. JUMES: Well, it says "felony offense or offenses above," Your Honor.

THE COURT: Count 1. Under Count 1, not under Count 2.

MR. LOFTIN: That's not -- forgive me, Your Honor, that's not what the special issue says.

THE COURT: Yes, it does. It says it applies only to Count 1.

MR. JUMES: In the special issue, Your Honor?

THE COURT: Absolutely. In the special issue, yeah. You want me to read it to you? Because I can read it into the record, if you'd like.

47

"If you find the defendant, Miguel E. Garciaarrendondo, guilty of the offense of injury to a child as charged in Count 1, then you should also consider the following special issue; otherwise, do not consider the special issue."

MR. LOFTIN: No, Your Honor, I asked you to read the verdict form of the special issue. What does that verbiage say?

THE COURT: Counsel, it is moot. The moment they found him not guilty of injury to a child, that's what the special issue applied to. It did not apply to Count2. It applied only to Count 1, rather. The moment they found him not guilty of Count 1, the special issue became moot.

MR. LOFTIN: We disagree, Your Honor.

THE COURT: You're free to.

(RRIX at 12-17)

### 3. Article 37.10(a) informal Verdict

If the verdict of the jury is informal, its attention shall be called to it, and with its consent the verdict may, under the direction of the court, be reduced to the proper form. See Tex. Code Crim. Proc. art. 37.10(a). If the jury refuses to have the verdict altered, it shall again retire to its room to deliberate, unless it manifestly appears that the verdict is intended as an acquittal; and in that case, the judgment shall be rendered accordingly, discharging the defendant. See Id.

An informal verdict is one that " does not meet the legal requirements of being . . . answered as authorized." See *Jennings v. State*, 302 S.W.3d 306, 309 (Tex.Crim.App. 2010). Article 37.10(a), this Court has explained, " sets out the method to repair [such a verdict's] informality." *Id*. To meet its legal requirements, a verdict should be unambiguous with respect to the jury's intent. See *Reese v. State*, 773 S.W.2d 314, 317 (Tex.Crim.App. 1989).

49

## 4. Uncertain and ambiguous verdicts

Here, there was a discrepancy in the jury's verdict that was reasonably called into question. An essential element of the charge -the element that the defendant used or exhibited the deadly weapon- was negated by the negative answer on the jury verdict form. A trial court should reject a verdict that is so ambiguous that the jury's intent cannot be fairly ascertained. Here, the trial court could properly have withdrawn and corrected the jury charge but failed to do so.

## 5. Harmful or egregious standard

Here, when Appellant was given the opportunity to object to the verdict forms before the trial court read the charge to the jury, Appellant objected but as to double jeopardy only. (RRVIII at 27). Appellant did not challenge the verdict forms until after the jury returned with a verdict. However, where the defendant elects to have the jury assess punishment, the verdict is not complete until the jury has rendered a finding "on both the guilt or innocence of the defendant and the amount of punishment." Tex. Code Crim. Proc. Ann. art. 37.07 § 3(c) (West Supp. 2012). Thus, at the time the Appellant objected, the verdict was not complete as to punishment and the objection was timely. Therefore, the "harm" standard should

50

be used. However, Appellant argues the evenmore difficult "egregious harm" standard is met in this case.

Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Allen v. State*, 253 S.W.3d 260, 264 (Tex.Crim.App. 2008) (citing *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex.Crim.App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex.Crim.App. 2007). In sum, the error must have been so harmful as to effectively deny the accused a fair and impartial trial. See *Warner v. State*, 245 S.W.3d 458, 461 (Tex.Crim.App. 2008). Egregious harm is difficult to prove, and it is evaluated on a case-by-case basis. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex.Crim.App. 2011).

In determining whether appellant was deprived of a fair and impartial trial, the courts will review "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel [, ] and any other relevant information revealed by the record of the trial as a whole." *Id*. (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (en banc). We will examine "any . . . part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused." *Id.* at 490 (quoting *Almanza*, 686 S.W.2d at 174).

### 4. Evidence of Harm

#### a. Entire Jury Charge

Since the element that the defendant used or exhibited a deadly weapon is clearly an element of the charge of Aggravated Assault of a Family Member with a Deadly Weapon, the jury should have answered in the affirmative. Thus, the verdict contradicted itself and was clearly not answered as authorized. This deprived Appellant of the fundamental right to be found guilty or not guilty based on the actual charge, the very basis of the case.

#### b. State of the Evidence

As discussed earlier in this opinion, the evidence was insufficient to prove beyond a reasonable doubt that Appellant was guilty of Aggravated Assault of a Family Member with a Deadly Weapon because there was insufficient evidence of a weapon and insufficient evidence that Appellant was in fact the person who harmed the child. (See issues I and II). This factor weighs in finding egregious harm. See, e.g., *Smith v. State*, 397 S.W.3d 765, 771–72 (Tex. App.—San Antonio 2013, no pet.); *Bui v. State*, 964 S.W.2d 335, 347 (Tex. App.—Texarkana 1998, pet. ref'd).

## C. Summary

The trial court's verdict form was deficient, it was confusing and ambiguous. The defense objected prior to the punishment hearing so at the time of the objection the verdict was not complete and the objection was timely. The ambiguous verdict caused both harm and egregious harm. The Court had the opportunity to amend the verdict form and get a corrected verdict but did not. Clearly Appellant was deprived of his right to be found guilty or not guilty on the charges presented. The court erred and the verdict should be overturned.

**V. The trial court erred in the jury charge at punishment by finding there was a deadly weapon and thereby using the wrong punishment range.**

**A. Standard of Review**

An appellate court reviews jury charge error based on whether error was preserved. See *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). "Objected-to-error" is reviewed for "some harm, " while "unobjected-to-error" is reviewed for "egregious harm." *Jennings v. State*, 302 S.W.3d 306, 311 (Tex. Crim. App. 2010).

In any felony offense in which it is "shown" that the defendant "used or exhibited [a] deadly weapon[, ]" the trial court "shall" enter a deadly weapon finding in the judgment. Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2). Such a deadly weapon finding impacts a convicted felon's eligibility for community supervision, parole, and mandatory supervision. Id.; Tex. Gov't Code Ann. §§ 508.145(d)(1), 508.149(a)(1), & 508.151(a)(2) (West Supp. 2016). A presumption of truthfulness and regularity applies to documents filed in the trial court. *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984).

**B. Case at Bar**

**1. <u>There was no evidence of a deadly weapon.</u>**

The only evidence presented on how the injury was caused was in Dr. Donahue's testimony. The Doctor suggested in his testimony that the possible causes could be hand pressure, stomping, or being hit against a wall or door jam. (RRV at 255-257) However, he could not say what caused the injury to Baby Julio in this case. (RRV at 256). No evidence was presented at trial of any object used to cause the injuries in this case. (See RR Generally.)

The jury apparently agreed that there was no evidence of a deadly weapon. On the Jury Verdict Form the jury was asked if they found evidence beyond a reasonable doubt that a deadly weapon existed. (CR at 297). They checked the blank ***<u>We do Not</u>***. (CR at 297).

**2. <u>Jury Charge on Punishment</u>**

An aggravated assault is a second degree felony except in the following circumstances in which it is a first degree felony:

**1. the offender uses a deadly weapon in committing the assault and causes serious bodily injury to the victim and the victim is a family or household member, or someone the offender is or has dated or had an intimate relationship with, qualifying the offense as a domestic assault**

**2. the aggravated assault is committed by a public servant, such as a state worker or city counselor acting in his official capacity**

**3. the victim is a person the offender knows to be a public servant engaged in the performance of his duties or the assault is committed in retaliation for the public servant performing his duties**

**4. the aggravated assault is committed in retaliation against a witness, informant or a person who reported a crime**

**5. the victim is a person the offender knows to be a security officer engaged in performing his duties, or**

**6. the offender shoots a firearm from a motor vehicle at a house, building or motor vehicle with reckless disregard for whether the house, building or motor vehicle is occupied and causes serious bodily injury to the victim. (Tex. Penal Code Ann. § 22.02).**

So, in the case at bar, because there was no deadly weapon finding and none of the other factors apply, the punishment range should have been for a second degree felony. This carry's a punishment range of 2 to 20 years. (Tex. Penal Code Ann. § 12.33.)

The jury verdict form however indicates the range is 5 to 99. (CR at 293) And indeed Appellant was sentenced to 30 years which is outside the second degree punishment range. (CR at 297).

### 3, Harm

Because the Defense vigorously objected to the jury court finding of deadly weapon and the Jury Charge, the case at bar should be reviewed under the "some harm" standard. (RRX 50-62). But even under the egregious harm standard it is clear that being sentenced outside the sentencing range for the offence is egregious harm because it is an illegal sentence. A sentence which is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal. *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim.App.2003).

### C. Summary

The Defense vigorously objected to the finding of a deadly weapon. The jury form indicated that there was *no* finding of a deadly weapon. With no deadly

weapon finding the punishment range should be 2 to 20 instead of the 5 to 99 that was written on the jury form. Since it is clear that being sentenced outside the sentencing range for an offence is egregious harm because it is an illegal sentence, Appellant respectfully requests the punishment be overturned and a new trial on punishment be had in the trial court.

## Conclusion

There was insufficient evidence that Appellant caused the injury to the child. To have found Appellant to be the responsible party based on a nonexistent timeline, no witnesses to the cause of the injury, and another party that was probably responsible and had opportunity, amounts to mere speculation.

There is also insufficient evidence of a deadly weapon. The only evidence presented on how the injury was caused was in Dr. Donahue's testimony. However, he could not say exactly what caused the injury to Baby Julio in this case and there was no evidence presented at trial of any object used to cause the injuries. The jury apparently agreed that there was no evidence of a deadly weapon when they checked ***We Do Not*** on the Jury Verdict Form.

The indictment was also insufficient because it described the means of injury by a "hard or soft object or surface". The phrase "hard or soft object or surface" fails to describe the specific manner and means of commission. The charging instrument must convey sufficient notice to allow the accused to prepare a defense. This phrase fails to do so.

The trial court erred when it allowed the jury charge to include an ambiguous jury verdict form for the trial on the merits. This resulted in jury charge

59

error. Since the element that the defendant *used or exhibited the deadly weapon* is clearly an element of the charge of Aggravated Assault of a Family Member with a a Deadly Weapon, the jury should have answered in the affirmative as to the deadly weapon finding. Instead the jury apparently agreed that there was no evidence of a deadly weapon when they checked ***We Do Not*** on the trial on the merits Jury Verdict Form.

On the punishment trial, the Jury Verdict Form indicates the punishment range is 5 to 99 not the 2 to 20 as it would be without a deadly weapon finding. As Appellant was sentenced to 30 years, this amounts to an illegal punishment. For this reason and all the others mentioned above, Appellant respectfully requests the judgment of the trial court be reversed.

Respectfully submitted,

/s/ Max J. Striker
Max J. Striker
State Bar No. 24058138
3000 East Loop 820
Fort Worth, Texas 76112
817.262.0758
maxstrikerlaw@yahoo.com

## Certificate of Service

I hereby certify that a true and correct copy of this brief has been served on the following persons or parties on this the 21ˢᵗ day of May, 2018:

Debra Windsor
Tarrant County Assistant District Attorney
Chief, Post Conviction
401 W. Belknap
Fort Worth, Texas 76196-0201
via U.S.P.S. Certified Mail, return receipt requested

Miguel E. Garciaarrendondo
TDCJ#   02137333
Gurney Unit
1385 FM 3328
Palestine, TX 75803
VIA U.S.P.S. Certified Mail, return receipt requested

/s/Max J. Striker
Max J. Striker

## Certificate of Word Count

I hereby certify that the word count indicated by my computer calculation is 11,051.

/s/Max J. Striker
Max J. Striker